**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES P. ROLICK,<br><br>                 **Plaintiff,**<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                 **Defendant.** | Civ. No. 17-4481 (KM)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

James Rolick brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–34. The Administrative Law Judge ("ALJ") determined that Mr. Rolick was not disabled under the Act and was therefore ineligible for DIB. The Social Security Administration ("SSA") Appeals Council denied review, rendering the ALJ's decision a final, reviewable decision. Mr. Rolick filed this action challenging the ALJ's determinations as not based on substantial evidence. For the reasons set forth below, the decision of the ALJ is affirmed.

## I.    BACKGROUND[1]

On June 24, 2013, Mr. Rolick filed a Title II application for a period of disability and DIB, alleging a disability onset date of February 10, 2010 based

---

[1]     Citations to the record are abbreviated as follows:

       "DE" = Docket entry in this case

on the following alleged conditions: macular degeneration, kidney stones, depression, diabetes, panic attacks, anxiety, sleep apnea, acid reflux, high blood pressure, thyroid problems, nerve damage in the leg and arm, and skin issues. (R. 208-11, 226, 159). The claim was initially denied on September 27, 2013, and denied upon reconsideration on January 28, 2014. (R. 153-66). Mr. Rolick then filed a written request on March 3, 2014 for a hearing with an ALJ. (R. 162-63). Mr. Rolick appeared and testified at a hearing on October 1, 2015 in front of ALJ Sharon Allard, in which the claimant was represented and an impartial vocational expert ("VE") was present. (R. 46).

ALJ Allard determined in an opinion dated January 22, 2016 that Mr. Rolick was not disabled under Sections 216(i) and 223(d) of the Act between the alleged onset date and the date of the opinion. (R. 46-56). On February 19, 2016, Mr. Rolick sought review with the SSA Appeals Council, and in support, submitted a letter brief dated May 9, 2016. (R. 207, 290-96). The SSA Appeals Council denied the request for review on March 15, 2017, and ALJ Allard's decision became the Commissioner's final decision. (R. 1-6).

Mr. Rolick filed a complaint with this Court on June 30, 2017, seeking modification of the ALJ's decision. (DE 1). Specifically, Mr. Rolick challenges certain aspects of the ALJ's decision as not being supported by substantial evidence. (See Pl. Br.). Mr. Rolick's last insured date for DIB purposes was December 31, 2015; therefore, in order to be eligible for DIB Mr. Rolick had to establish disability on or before that date. (R. 48, 224). 42 U.S.C. §§ 423(a), (c); 20 CFR §§ 404.101(a), 404.131(a).

---

"R. _" = Administrative Record (DE 6, 13) (The cited page numbers correspond to the number found in the bottom right corner of the page for all DE 6 attachments)

"Pl. Br." = Brief in Support of Plaintiff Rolick (DE 21)

"SSA Br." = Social Security Administration Secretary's Opposition Brief (DE 23)

"Pl. Reply" = Reply Brief in Support of Plaintiff Rolick (DE 24)

2

## II. DISCUSSION

To qualify for DIB, a claimant must meet income and resource limitations and show that he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A) & (B); 20 C.F.R. § 416.905(a); *see Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment, or combination of impairments, meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.) If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and

416.909), the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If the claimant has the RFC to do her past relevant work, the claimant is not disabled. If the claimant does not have the RFC to do her past relevant work, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering his or her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual issues, the Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted); *Atl. Limousine, Inc. v. N.L.R.B.*, 243 F.3d 711, 718 (3d Cir. 2001). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak*, 777 F.3d at 610 (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the

4

legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007). Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

The ALJ followed the five-step process in determining that Mr. Rolick was not disabled under the Act. Her findings may be summarized as follows:

**Step One:** At step one, the ALJ determined that Mr. Rolick had not engaged in substantial gainful activity since February 10, 2010, the alleged onset date of disability. (R. 48).

**Step Two:** At step two, the ALJ determined that since the alleged onset date of disability, Mr. Rolick has had the following severe impairments: macular degeneration; obesity; diabetes mellitus; spinal impairments after the

5

2001 cervical spine decompression surgery; and sleep apnea. (R. 48). The ALJ also concluded that Mr. Rolick's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and are therefore non-severe. (*Id.*).

**Step Three:** At step three, the ALJ determined that the severe impairments listed above at Step Two do not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526). (R. 51). The ALJ considered the medical listings at 1.04, 2.02, 3.10, and 9.00, but reasoned that the medical evidence did not support findings equivalent in severity to the criteria of those listed impairments, either singly or in combination. (*Id.*).

**Step Four:** At step four, the ALJ determined that Mr. Rolick has the RFC to perform light work as defined in 20 CFR 404.1567(b):

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he: can frequently climb ramps and stairs, balance, stoop, kneel, and crouch; cannot climb ladders, ropes, or scaffolds, crawl, or work around hazards, including moving mechanical parts or at unprotected heights; cannot have concentrated exposure to temperature extremes of heat or cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation; can frequently finger, handle, and operate hand controls; and requires tasks which enable him to stretch or change position for five minutes each hour while remaining on task.

(R. 51)

**Step Five:** Finally, the ALJ determined that, considering Mr. Rolick's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (R. 55). Specifically, the ALJ found that Mr. Rolick is capable of performing his past relevant work as a computer-aided design drafter, which does not require the performance of work-related activities precluded by Mr. Rolick's RFC. (*Id.*).

6

### C. Analysis of Mr. Rolick's Appeal

Mr. Rolick challenges the following aspects of the ALJ's decision: (1) the ALJ's finding that Mr. Rolick's depression and anxiety are non-severe; (2) the ALJ's reasons for not crediting the opinion of Dr. Medhi, Mr. Rolick's treating psychiatrist/physician; (3) that the ALJ improperly evaluated Mr. Rolick's allegations and subjective complaints; and (4) the ALJ's finding that Mr. Rolick can perform his past relevant work as a computer-aided design drafter. (Pl. Br. at 5). I address each ground separately.

#### i. The ALJ's finding that Mr. Rolick's depression and anxiety are non-severe

First, Mr. Rolick asserts that the ALJ's finding that his depression and anxiety are non-severe is not based on substantial evidence. Specifically, Mr. Rolick argues that "the ALJ selectively cited from the evidence of record, failing to meaningfully address the more recent mental health progress notes" and "failed to include any mental limitations whatsoever in assessing Mr. Rolick's RFC." (Pl. Br. at 21-23).

In determining that Mr. Rolick's depression and anxiety did not rise to the level of being severe, the ALJ started her analysis by noting that Mr. Rolick refused to see a psychiatrist in May 2013 and that there was no evidence of any history of psychiatric treatment prior to that time, despite an alleged disability onset date of February 2010. (R. 48, 420). Next, the ALJ described Mr. Rolick's psychiatric evaluation in August 2013, performed by consultative examiner Charles Hasson, Ph.D., who assessed no or only mild limitations in Mr. Rolick's capacity to understand, remember, and carry out instructions and respond appropriately to supervision, coworkers, and work pressures. (R. 49, 549-54). Dr. Hasson also noted that Mr. Rolick's functioning appeared to be within normal limits. (R. 553).

Dr. Hasson opined in addition that Mr. Rolick had severe impairment in his capacity to do work-related activities such as sitting, standing, walking, listening, carrying, handling objects, hearing, speaking, and traveling. (R. 49, 549-54). The ALJ rejected those physical assessments because they were

7

outside the scope of Dr. Hasson's specialty as a psychologist and were primarily based on the claimant's self-reporting of his ailments, rather than medical assessment or testing procedures. (*Id.*).[2]

The ALJ cited a November 2013 mental status examination of Mr. Rolick which revealed anxious mood, but also showed intact attention and concentration, coherent thought process, and appropriate and full affect. (R. 49, 602-09). A December 2013 follow-up neurological exam revealed only mild cognitive impairment. (R. 49, 649-50). Moreover, during appointments in May and July 2014, the medical care providers noted improvements in Mr. Rolick's mental health symptoms, noting his denial of any suicidal or homicidal ideations or adverse effects from medications. (R. 49-50, 776, 798-801). The ALJ also considered the State agency psychological consultants' assessments from the fall of 2013, which noted mild restrictions in activities of daily living, social functioning, concentration, persistence, and pace. (R. 50, 124-37).

Mr. Rolick argues that the ALJ "did not meaningfully address" his treatment for PTSD at Bergen Regional Medical Center starting in September 2013. (Pl. Br. at 24; R. 569-654, 707-807). However, a review of those records shows that throughout this period Mr. Rolick was able to care for himself, did not have thoughts about hurting himself or others, had coherent thought processes and intact thought associations, had good insight and judgment, and showed only "mild cognitive impairment". (R. 586, 592, 594, 600, 602, 607, 629, 631, 636, 641, 649, 714, 716, 722, 724, 728, 730). The ALJ made similar findings and made note of these records in her opinion. (R. 49). Upon reviewing these records, it is apparent that the ALJ did meaningfully address Mr. Rolick's treatment.

Dr. Hanson noted in his August 27, 2013 mental health evaluation that Mr. Rolick was "alert and had a clear sensorium", his speech was "goal-directed

---

[2] The ALJ, it is fair to say, considered even Dr. Hasson's assessment of mental limitations to be over-reliant on Mr. Rolick's subjective reports, which the ALJ thought "casts into some question the reliability and probative value of Dr. Hasson's entire opinion." (*Id.*). He did not reject those conclusions, however.

and evidenced no signs of formal thought disorder", his "short-term memory processes and ability to concentrate" appeared to be within normal limits, and diagnosed him with generalized anxiety disorder. (R. 549-54). Furthermore, the ALJ relied on (1) Mr. Rolick's November 2013 mental status examination, which showed intact attention and concentration, coherent thought process, and appropriate and full affect (R. 602-09); (2) Mr. Rolick's December 2013 follow-up neurological exam that revealed only mild cognitive impairment (R. 649-50); and (3) Mr. Rolick's appointments in May and July 2014 Mr. Rolick that noted improvements in his mental health symptoms and denied any suicidal or homicidal ideations or adverse effects from medications. (R. 49-50, 776, 798-801).

While Mr. Rolick does have mental health conditions that undoubtedly produced symptoms, the ALJ had a more than adequate basis for concluding that those mental health conditions were not severe as that term is used within the Act. The ALJ went through the four broad functional areas set out in the disability regulations for evaluating mental disorders (daily living, social functioning, "concentration, persistence, or pace", and episodes of decompensation) and reasonably determined that the evidence does not indicate that Mr. Rolick is more than mildly limited in those categories due to his mental health conditions. (R. 50-51); 20 CFR 404.1520a. Having made this assessment when rating the severity of Mr. Rolick's mental impairments, the ALJ properly performed an RFC analysis that reflected the mild degree of limitation due to Mr. Rolick's mental health. (R. 51). In other words, the ALJ did not, as Plaintiff asserts, "fail[] to include any mental limitations whatsoever in assessing" Mr. Rolick's RFC, but instead, only considered Mr. Rolick's mental impairments to the extent that they induce non-severe, mild limitations. (Pl. Br. at 21; R. 51).

Overall, the ALJ had, and considered, substantial evidence in support of the finding that Mr. Rolick's anxiety and depression resulted in only mild limitations and, consequently, were not severe. Mr. Rolick's mental health examinations demonstrated adequate mental functioning with intact thought

9

processes, memory span, and concentration. (R. 549-54). It would be inappropriate for this Court to substitute its own judgment in weighing the mental health evidence because the ALJ properly relied on substantial evidence in her determination that Mr. Rolick's mental health impairments were non-severe and caused only mild limitations. *See Zappala v. Barnhart*, 192 F. App'x 174, 177 (3d Cir. 2006) (citing *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966) ("[T]he possibility that two inconsistent conclusions may be drawn from the evidence contained in the administrative record does not prevent an agency's finding from being supported by substantial evidence."); *see also Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (noting that the Court must be mindful that it should "not weigh the evidence or substitute [its own] conclusions for those of the fact finder."). Consequently, it was appropriate for the ALJ to engage in an RFC analysis that correspondingly considered the limitations from Mr. Rolick's mental health ailments to be mild.

### ii. The ALJ's reasons for not crediting the opinion of Dr. Medhi, Mr. Rolick's treating psychiatrist/physician

Second, Mr. Rolick challenges the ALJ's reasons for not crediting the opinion of Dr. Medhi, Mr. Rolick's psychiatrist/physician. (Pl. Br. at 28-35). With respect to Dr. Medhi's report, the ALJ wrote the following:

> A November 2013 report from treating physician Askar Mehdi, M.D., concluding that the claimant is unable to work, citing difficulty with standing, climbing, stooping and bending, as well as issues with low frustration tolerance, is given little weight (Exh. 21F). Dr. Mehdi's assessment is vague and conclusory, lacking a function-by-function assessment and relating to an issue reserved to the Commissioner. Moreover, Dr. Mehdi's report suggests an extensive degree of restriction that is simply not supported by the generally moderate medical evidence of record.

(R. 54; R. 707-08). Mr. Rolick takes issue with (1) the notion that Dr. Mehdi's assessment is vague and conclusory; (2) that the areas Dr. Mehdi addressed are reserved for the Commissioner; and (3) that during a follow-up visit in March 2014, (R. 733), Mr. Rolick's condition had worsened, which was not given proper weight in the ALJ's analysis. (Pl. Br. at 28-35).

10

The ALJ's determination that Dr. Medhi's assessments are vague and conclusory is supported by the medical record. Dr. Medhi's report merely lists the names of the ailments and checks off boxes without providing sufficiently specific details as to the basis for his diagnosis, what evaluative steps he took, and whether he performed a function-by-function assessment. (R. 707-08). The ALJ acted consistently with the regulatory framework in giving Dr. Mehdi's report the weight she deemed appropriate, including weighing whether the opinion is otherwise supported by medical signs, laboratory findings, and the record as a whole. *See* 20 CFR 404.1527(c). The ALJ may discount the opinion of a treating physician unless it is well-supported by objective evidence and "is not inconsistent with the other substantial evidence" in the record. 20 CFR 404.1527(c)(2); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202 (3d Cir. 2008).

As to the argument that the issues Dr. Mehdi addressed are reserved for the Commissioner, the ALJ was correct in noting that some of Dr. Mehdi's conclusions are reserved for the Commissioner. For example, Dr. Medhi checked boxes indicating his determination that Mr. Rolick is a likely candidate for Supplemental Security Income. He also concluded that Mr. Rolick cannot work, based on his low frustration tolerance, trouble concentrating, that he "blows up at people", and feels he is often scapegoated. (*Id.*). *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). The ability or disability to work, however, is a specialized determination under the SSA.

With respect to the March 2014 follow-up visit, there is no indication that Mr. Rolick's condition worsened to a degree that would warrant the ALJ's altering her conclusions. (R. 733-41). It does not appear that Dr. Mehdi was the treating physician during this visit. Nonetheless, the provider determined that Mr. Rolick had no difficulty with "social/interpersonal skills", literacy skills, or speech. (R. 740). While the March 2014 report did note impaired cognitive

11

abilities and increased problems with memory, it otherwise largely tracks the earlier reports and does not significantly increase the assessed severity of Mr. Rolick's ailments.

### iii. Whether the ALJ improperly evaluated Mr. Rolick's allegations and subjective complaints

Third, Mr. Rolick asserts that the ALJ improperly evaluated his allegations and subjective complaints. (Pl. Br. at 35-39; Pl. Reply at 10-12). He argues that because the medical evidence supports his subjective complaints, the ALJ was required to give great weight to his testimony. (Pl. Br. at 38-39) (citing *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993) ("Where medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence.")). Defendant responds that, based on substantial evidence of record, the ALJ was entitled to give such complaints only partial weight. (SSA Br. at 21).

While it is true that an ALJ must give significant weight to a claimant's subjective testimony of the inability to perform even light or sedentary work, that is the case only when that testimony is supported by competent medical evidence. An ALJ may discount a claimant's subjective complaints if they are inconsistent with the evidence of record. 20 CFR § 404.1529(a); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999). Thus an ALJ will consider a claimant's statements about the intensity, persistence, and limiting effects of symptoms, but will evaluate those statements "in relation to the objective medical evidence and other evidence," in reaching a conclusion as to whether a claimant is disabled. 20 CFR § 404.1529(c)(4).

In this case, the ALJ determined that Mr. Rolick's subjective complaints of symptoms were only entitled to partial weight, a conclusion supported by substantial evidence of record. (*See* R. 48-55). When evaluating Mr. Rolick's subjective complaints, the ALJ considered, among other things, objective medical evidence, Mr. Rolick's treatment course, and the impact on his daily living. (*Id.*). For example, the ALJ noted that Mr. Rolick did not seek psychiatric

treatment until May 2013 despite claiming a disability onset date of February 2010; that subsequent mental health treatment identified only mild cognitive impairments and improved some of his symptoms; and that the State agency psychological consultants assessed only mild restrictions in activities of daily living, mild difficulty maintaining social functioning, and mild difficulty maintaining concentration, persistence, and pace. (*Id.*). Moreover, the ALJ also noted that the evidence did not establish significant difficulties with standing, walking, sitting, or light level lifting and carrying. (R. 54).

Overall, the ALJ determined that Mr. Rolick's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but noted that Mr. Rolick's statements concerning the intensity, persistence, and limiting effects of these symptoms are only partially credible. (R. 52). That assessment is consistent with the record evidence.

### iv. The ALJ's finding that Mr. Rolick can perform his past relevant work as a computer-aided design drafter

Fourth, Mr. Rolick challenges the ALJ's determination that he is capable of performing past relevant work as a computer-aided design ("CAD") drafter. (Pl. Br. at 40-44). Specifically, Mr. Rolick argues that ALJ erred by not properly considering the impact of Mr. Rolick's mental impairments on his ability to work, the problems with his hands, and his macular degeneration. (*Id.*).

The ALJ took Mr. Rolick's RFC (quoted at p. 6, *supra*) as the baseline for comparison. Measuring that RFC against the physical and mental demands of work as a CAD drafter, the ALJ found that Mr. Rolick was able to perform the work as actually and generally performed. (R. 55). That finding was supported by substantial evidence in the record. Mr. Rolick successfully completed a college program to earn a Bachelor's degree in economics during the alleged disability period, and thereafter actively sought employment as a CAD drafter. (R. 551-52). The VE testified that a person with the same age, education, and work background as Mr. Rolick with the RFC identified would be able to perform the requirements of Mr. Rolick's past relevant work as a CAD drafter. (R. 55, 115-20).

13

Additionally, with respect to the impairments in his hands, when he sought treatment for upper extremity numbness and tingling, he was determined to have had full strength in all joints. (R. 334, 649, 808, 814). Moreover, as to visual limitations, the ALJ recognized that Mr. Rolick had macular degeneration but the State agency physicians did not assess any resulting work-related limitations and assessed no visual limitations. (R. 131, 150, 460, 706). I addressed above the ALJ's determinations that Mr. Rolick's mental health conditions were non-severe and only produced mild limitations, which was supported by the record. *See* Subsection II.c.i, *supra.* Therefore, the ALJ's finding that Mr. Rolick can perform his past relevant work as a CAD drafter was supported by substantial evidence in the record.

## CONCLUSION

The ALJ's January 22, 2016 decision is affirmed. An appropriate order accompanies this opinion.

Dated: February 14, 2019

KEVIN MCNULTY
**United States District Judge**